Bouldin, J.,
delivered the opinion of the court.
The first error assigned in this case, both in the petition and in the brief of the plaintiffs in error, is that the demurrer to the declaration was overruled; when it should have been sustained. We understand, however, that this objection has been waived by the counsel in this court; and we think properly. The contract under consideration does not present the case of a condition precedent, to be strictly performed by the defendants in error before any liability would rest on the plaintiffs in error; but it is rather a case of concurrent promises, where the acts to be done are simultaneous, imposing correlative duties on both parties. In such cases “ either party may sue the other for a breach of the contract on showing either that he was able, ready and willing to do his act at the proper time, and in the proper way, or that he was prevented from doing it—being so ready to do it—by the act or default of the other contracting party.” 2 Parsons on Contracts, 5th ed. p. 677; 4 Rob. Practice, p.p. 300 to 304, and cases cited.
Indeed, even in cases of conditions strictly precedent, it has been held by this court, that “ whenever the defendant, by his own act or neglect, prevents the performance of the condition precedent, he thereby excuses it; and the.plaintiff may recover, as if he had performed the condition.” J. Moncure, delivering the opinion of the court in the case of The Baltimore & Ohio Railroad Company v. Polly, Wood & Co., 14 Gratt. 447, 462.
We think that the plaintiffs below sufficiently averred in the declaration their ability, readiness and willingness to perform their part of the contract at the proper *573 time and in the proper way, and that they were prevented from completing it by the default of the defendants. ¥e are therefore of opinion that the demurrer was properly overruled.
The court is further of opinion, that there was no error in the refusal of the court below to give the first and second instructions, in the form asked by the defendants below, or in giving them as modified by the court. The first instruction asked for was as follows: “Unless the jury believe from the evidence, that each hog of the 241 hogs in plaintiffs’ declaration mentioned, weighed not less than 180 pounds gross at the scales near Glade Spring depot, on the 8th of December 1865, they must find for the defendants.”
The contract set out in the declaration, allowed the plaintiffs below, the option of delivering not less than 200 nor more than 300 hogs of the prescribed weight. Under that contract they clearly had a right to deliver 200 or 300, or any intermediate number of their proper weight; yet the instruction asked for would entirely deprive them of that option, and would defeat their action altogether, notwithstanding 240 of the 241 hogs tendered, might exceed the minimum weight. The court refused to -give the instruction in that form, but ' modified it so as to made it conform to the contract of the parties. In this, there was no error.
The second instruction, as asked by the defendants below, affirmed the same principle, and very properly received at the hands of the court the same modification.
The fourth instruc+ion moved by the defendants below, affii’med two propositions, neither of which were sanctioned by the contract of the parties.
The first was, that it was incumbent on the plaintiffs below, in order to sustain their action, to show that each *574 hog of the 241 mentioned in the declaration, was sepa- ' rately weighed at the time and place of delivery. The • contract contains no such unreasonable stipulation. It only required that the hogs should be all weighed at the scales near Glade Spring depot, and that none of them should weigh less than 180 pounds. They were all weighed at the scales aforesaid in 16 lots, ranging from 7 to 20 ha a lot, and the lots averaging from 209 to 249 pounds for each hog, and but two of the lots weighing less than 220 lbs. to the hog. Taking these weights into consideration with the other facts in the cause, it is apparent that there could not have been many of the hogs, if any, which would not obviously exceed the minimum weight; and had the defendants been present, as it was their duty to be, they would have seen at once that it was unnecessary and unreasonable to weigh 241 such hogs separately. They would at once, we doubt not, have said to the plaintiffs, let them be weighed in lots ; and if they felt at all doubtful about the weight of any one or more of them, as they were di’iven on the scales, they could have required a separate weighing of those about which the doubt existed. But they chose deliberately to violate their contract, and did not attend; and now seek to punish the plaintiffs below with onerous and unreasonable requirements as a consequence of their own default. We think the court did not err in refusing to give that branch of the instruction.
The second branch of the instruction affirmed the same proposition which had already been twice rejected by the court, viz: If any one of the 241 hogs weighed less than 180 pounds, the jury should find for the defendants. Such not being the true meaning of the contract, nor the effect of the declaration, we are of opinion that the entire instruction was properly refused.
The court is further of opinion that there was no error *575 in allowing the witness, Thomas Hamilton, to express his opinion as to the weight of the hogs. Such testimony, in the state of things existing at the trial of the issue between the parties, was the best that could be then adduced, and was not secondary but primary evidence. It was direct testimony to a fact. The hogs had not been weighed separately at the time and place mentioned in the contract, but as we have seen were weighed in 16 lots or parcels, ranging from seven to twenty in a lot. They were slaughtered afterwards without being separately weighed, and the exact weight of each hog could not then be known. In this state of facts, Hamilton, an experienced drover,who saw the several lots on the scales, after being examined by the court as to his experience as a drover, and his capacity to form a correct opinion, was allowed to state whether, in his opinion, any hog would weigh less on that day than 180 pounds; and he expressed the opinion that no hog in the entire parcel of 241 would on that day come under that weight. This evidence was objected to, 1st, because the witness was allowed to express his opinion as an expert; and secondly, because the evidence itself was merely substitutionary for the positive “evidence which could have been obtained by the scales.”
To sustain the last mentioned objection, reference has been made to 1 Greenleaf on Evidence, § 82. The general rule is there laid down, “ that no evidence shall be received which is merely substitutionary in its nature, so long as the original evidence can be had” This rule plainly implies the substitution of weaker in the place of other and “ original ” evidence which was at the time in existence and accessible, and evidently applies to cases of written testimony, in which there is an attempt to use in the place of the “originals” either copies or parol proof of their contents. In such cases the “ originals,” if in existence, must be produced.
*576 It might be enough to say in this case, that the evidence required by the objection was not only not in ex- ' istence at the date of the trial, and therefore could not be produced, but in point of fact never existed. The hogs were not weighed separately, and it was no longer possible to weigh them, and if it were necessary to show the separate weights of any of them, it could only be done by such proof as was offered; being the best that could then be had. It will be seen, however, from the section cited, that “ the rule excludes only that evidence which itself indicates the existence of more original sources of information. But, where there is no substitution of evidence, but only a selection of weaker instead of stronger proofs, or an omission to supply all the proofs capable of being .produced, the rule is not infringed.” 1 Greenleaf on Evidence § 82, citing Tayloe v. Riggs, 1 Peter’s R. 591-596; United States v. Reyburn, 6 Peters’ R. 352-367; and Minor v. Tillotson, 7 Peters’ R. 99.
To make the rule apply to Hamilton’s testimony, then, it should have appeared that the hogs had been in fact separately weighed, and a list of weights kept; and that this original list of weights had been withheld without explanation, and a mere copy offered. Such was not the case. The best original testimony of which the case admitted was adduced; and the rule, therefore, is not infringed, nor did the court err in allowing the witness to express his opinion ás an expert.
The nature of the testimony was such that it could only be given as his opinion: It did not admit of absolute certainty. Like questions' of identity, handwriting and the like, the opinion and belief of the witness was the only proper form of testimony, the only kind of testimony that could at that time be offered touching the fact in question. It was not properly speaking the testimony of an expert, but was evidence of a *577 fact. Experts are generally called to express an opinion on testimony already before the jury; for instance, to say whether on a given state of facts a man was sane or insane ; was diseased or not; whether a wound examined or described; was sufficient to cause death, and so in like or analogous cases. J3ut here the witness testified to a fact in the cause as to which he was entirely competent to testify; and his being called an expert, and being previously examined by the court as such, did not render him the less competent; indeed that examination only showed more plainly his capability to testify intelligently and satisfactorily on the point in question; for we all know that an experienced drover becomes wonderfully accurate in estimating the weight of hogs; when required to cut off a lot of hogs of a given weight each, they very rarely commit a serious error. We are of opinion, therefore, that the testimony was legal and proper.
And we are further of opinion, that the testimony of Kelly, Johnson and others as to the market price of hogs at other places than Abingdon, in the vicinity of the place of delivery, was, under the circumstances, proper and admissible to show the value of the hogs at the time and place of delivery. It was not a case for trammelling the plaintiffs who were in no default with rigid requirements. There being no market for hogs on the day and at the place of delivery, it was competent to show their actual value at that time and place, which is the true point of enquiry, by “ comparison of such prices and sales,” (in the vicinity at or about that time,) as can be shown, and by reference to the reasonable probabilities of the case ; and “ in such case, recourse may be had to the sales which were made nearest in time and in the nearest market.” But this is a means merely of ascertaining the value at the time and place of delivery when *578 there is no market value there, or but an uncertain one, but not the only means. It may often be eminently proper to examine the sales and prices immediately preceding and succeeding the time of delivery, and at other places in the vicinity than the nearest market. See Sedgwick on the measure of damages, 4 edition, ch. 10, commencing at p. 294, but more especially p. 816, note 1, and cases there cited. "We think this case, in which the plaintiffs beJow have not been in default, a proper one for indulging the wddest latitude of investigation, and there was no error in admitting the testimony.
The only remaining questions arise on the motion for a new trial. Without goinginto an examination of the evidence, we will content ourselves with saying that the case was fairly submitted to the jury; that there was testimony in the cause to sustain the verdict; and that it was approved by the judge who presided at the trial. Under such circumstances it is not the practice of this court to interfere with a verdict approved by the court of trial, although this court might be inclined to differ to some extent with the judge.
Upon the whole case we are of opinion that there is no error in the judgment of the Circuit court, and that the same be affirmed, with costs and damages to the appellees.
Judgment arrirmed.